## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF RHODE ISLAND

CHRISTOPHER LACCINOLE,    )
    )
    Plaintiff,    )
    )
    v.    )    C.A. No. 1:21-CV-00045-MSM-PAS
    )
NAVIENT SOLUTIONS, LLC, JOHN    )
M. KANE, & DOES 1-10 INCLUSIVE    )
    )
    Defendants.    )
    )

## MEMORANDUM AND ORDER

Mary S. McElroy, United States District Judge.

Before the Court is the defendants, Navient Solutions, LLC ("Navient") and John M. Kane's, Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(6). (ECF No. 19.) Mr. Kane asserts that he is not subject to the personal jurisdiction of this Court and Navient argues that the plaintiff, Christopher Laccinole's, Second Amended Complaint fails to state any claims upon which relief can be granted.

Through his Second Amended Complaint, Mr. Laccinole alleges against the defendants violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA"), the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, and a host of state-law claims. His claims arise from a series of phone calls he received from NSL from October 12 to November 19, 2020, regarding a student loan Navient serviced and was apparently owed by someone other than Mr. Laccinole. Indeed, Mr. Laccinole alleges that he owed no such debt to Navient. Further facts,

1

as alleged in the Second Amended Complaint, are discussed as relevant to various causes of action, below.

For the following reasons, the Court GRANTS IN PART and DENIES IN PART the defendants' Motion.

## DISCUSSION

### A.  John M. Kane's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(2)

Under Fed. R. Civ. P. 12(b)(2), a motion to dismiss for lack of personal jurisdiction imposes the burden on the plaintiff to establish the existence of jurisdiction. *Astro–Med, Inc. v. Nihon Kohden Am., Inc.,* 591 F.3d 1, 8 (1st Cir. 2009). A district court may choose from three methods for determining whether a plaintiff has met its burden: prima facie, preponderance of the evidence, or an intermediate standard. *Id.*

Here, the Court applies the prima facie standard.  Known as the most "plaintiff friendly," the prima facie method requires a court to consider only whether the plaintiff has submitted enough evidence to support personal jurisdiction. *Astro-Med, Inc.*, 591 F.3d at 8.  Properly documented evidence is accepted as true regardless of whether the defendant disputes it.  *Id.*  But the Court does not consider conclusory allegations or farfetched inferences.  *Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n,* 142 F.3d 26, 34 (1st Cir. 1998).

"For there to be personal jurisdiction over a defendant as to a claim, the Due Process Clause requires that the defendant must have sufficient minimum contacts with the state, such that maintenance of the suit does not offend traditional notions

of fair play and substantial justice." *Nandjou v. Marriott Int'l, Inc.*, 985 F.3d 135, 148 (1st Cir. 2021).  There are two types of personal jurisdiction: general and specific. *Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A.*, 290 F.3d 42, 51 (1st Cir. 2002).  An out-of-state defendant must have "continuous and systematic" contacts with the forum state to give rise to general personal jurisdiction. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415 (1984).  In the absence of systematic and continuous contacts, a court may exercise specific personal jurisdiction where "(1) the defendant purposefully directed its activities at residents of the forum, (2) the claim arises out of or relates to those activities, and (3) assertion of personal jurisdiction is reasonable and fair." *Emissive Energy Corp. v. SPA-Simrad, Inc.*, 788 F. Supp. 2d 40, 44 (D.R.I. 2011).

The evidence Mr. Laccinole presents in support of personal jurisdiction over Mr. Kane are Navient's annual corporate filings with the Rhode Island Secretary of State that list Mr. Kane among its corporate officers and then, when Navient apparently changed from a corporation to a limited liability company in 2017, as its manager.  (ECF No. 17-1.)  These facts, standing alone, do not establish personal jurisdiction over Mr. Kane.  *See Cassaboon v. Maine Med. Ctr.*, 600 F.3d 25, 37 (1st Cir. 2010) (holding "[c]orporate registration ... adds some weight to the jurisdictional analysis, but it is not alone sufficient to confer general jurisdiction").  Nor has Mr. Laccinole established specific personal jurisdiction.  He has presented no evidence (or even plausible allegations) that Mr. Kane personally was involved in any phone calls relating to his claims or to any effort to service student loans in Rhode Island.

As such, the Court cannot exercise personal jurisdiction over Mr. Kane, and he is dismissed from the matter.

**B. Navient's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6)**

**1. Motion to Dismiss Standard**

On a motion to dismiss, the Court "must assume the truth of all well-plead[ed] facts and give plaintiff the benefit of all reasonable inferences therefrom." *Ruiz v. Bally Total Fitness Holding Corp.*, 496 F.3d 1, 5 (1st Cir. 2007). To survive a motion to dismiss, the complaint must state a claim that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The Court assesses the sufficiency of the plaintiff's factual allegations in a two-step process. *See Ocasio-Herandez v. Fortuno-Burset*, 640 F.3d 1, 7, 11-13 (1st Cir. 2011). "Step one: isolate and ignore statements in the complaint that simply offer legal labels and conclusions or merely rehash cause-of-action elements." *Schatz v. Republican State Leadership Comm.*, 699 F.3d 50, 55 (1st Cir. 2012). "Step two: take the complaint's well-pled (*i.e.,* non-conclusory, non-speculative) facts as true, drawing all reasonable inferences in the pleader's favor, and see if they plausibly narrate a claim for relief." *Id.* "The relevant question … in assessing plausibility is not whether the complaint makes any particular factual allegations but, rather, whether 'the complaint warrant[s] dismissal because it failed *in toto* to render plaintiffs' entitlement to relief plausible." *Rodriguez-Reyes v. Molina-Rodriguez*, 711 F.3d 49, 55 (1st Cir. 2013) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 569 n.14 (2007)).

2.  **Counts I and II: Use of an Automatic Telephone Dialing System, 47 U.S.C.
    § 227(b)(l)(A)(iii) and 47 CFR § 64.1200(a)(l)(iii)**

In relevant part, the TCPA regulates the making of "any call (other than a call
… made with the prior express consent of the called party) using any automatic
telephone dialing system … (iii) to any number assigned to a … cellular telephone
service …." 47 U.S.C. § 227(b)(1)(A)(iii). "Automatic telephone dialing system"
("ATDS") means "equipment which has the capacity—(A) to store or produce
telephone numbers to be called, using a random or sequential number generator; and
(B) to dial such numbers." 47 U.S.C. § 227(a)(1). "To qualify as an 'automatic
telephone dialing system,' a device must have the capacity to either store a telephone
number using a random or sequential generator or to produce a telephone number
using a random or sequential number generator." *Facebook, Inc. v. Duguid*, 141 S.
Ct. 1163, 1167 (2021).

Here, Mr. Laccinole asserts that NSL made its calls to him with use of an ATDS
and alleges facts that, when accepted as true, could set forth a plausible case that
Navient used an ATDS. For instance, he claims some calls involved an audible click
followed by a pause before an operator joined the call or the use of a prerecorded
message. (ECF No. 17 ¶¶ 80-81.) This could indicate the calls were made
automatically and generated without human intervention.

Navient argues that the calls were specifically targeted to someone other than
Mr. Laccinole regarding the servicing of a debt that person owed and, therefore, the
calls do not meet the definition of an ATDS. *See Duguid*, 141 S. Ct. 1168. That may
be true for some calls, but Mr. Laccinole also alleges other calls where no live person

would respond to his answering the call or he heard only ringing. (ECF No. 17 ¶¶ 64-65.) This could indicate a system where several calls were placed by a sequential generator, and not enough operators were available to respond to those who answer the phone.

Navient has provided audio recordings of calls that would belie Mr. Laccinole's description of them. But on a motion to dismiss this Court can only consider evidence outside of the pleadings when it is expressly linked to the factual allegations *and* its authenticity is unquestioned. *Diva's Inc. v. City of Bangor,* 411 F.3d 30, 38 (1st Cir. 2005). Here, Mr. Laccinole disputes the authenticity of the call recordings and therefore the Court cannot currently consider them. (ECF No. 28 at 30-31.)

It is also worth noting that a plaintiff would not, without the benefit of discovery, have personal knowledge of a defendant's calling system. But Mr. Laccinole has put forth sufficient facts that, when accepted as true, could plausibly indicate the use of an ATDS. It may well be demonstrated that the technology used does not meet the definition of an ATDS, but that requires from Navient the presentation of certain facts that are appropriately considered on a motion for summary judgment, not on a motion to dismiss. Navient's Motion on Counts I and II is denied.

### 3. Counts III and IV: TCPA Regulations Concerning Prerecorded Messages, 47 C.F.R. §§ 64.1200(b)(1), (2)

Mr. Laccinole alleges that Navient violated both 47 C.F.R. § 64.1200(b)(1), by failing to properly identify themselves at the beginning of prerecorded messages, and 47 C.F.R. § 64.1200(b)(2) by not providing a telephone number during prerecorded

messages.  But the subsection of the TCPA that authorizes these regulations does not provide a private cause of action.  47 U.S.C. § 227(d); *see also Boydston v. Asset Acceptance LLC*, 496 F. Supp. 2d 1101, 1110 (N.D. Cal. 2007).

The Court therefore dismisses Counts III and IV.

### 4. Counts V to VIII: Further TCPA Claims

In Counts V to VIII, Mr. Laccinole seeks to recover under § 227(c)(5) of the TCPA and its implementing regulations.  Section 227(c)(5) offers a private right of action to "[a] person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection."  "[T]his subsection refers to subsection (c), titled 'Protection of Subscriber Privacy Rights,' in which Congress ordered the FCC to initiate a rulemaking to protect 'residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object."  47 U.S.C. § 227(c)(1). The TCPA defines "telephone solicitation" to mean "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person ...."  47 U.S.C. § 227(a)(4).

Mr. Laccinole does not allege solicitation—he alleges the defendants are debt collectors calling in connection with the collection of a debt.  Indeed, he concedes as much.  (ECF No. 29 at 23.)  "[C]alls solely for the purpose of debt collection are not telephone solicitations and do not constitute telemarketing.  Therefore, calls regarding debt collection or to recover payments are not subject to the TCPA's

separate restrictions on 'telephone solicitations.'" *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 23 FCC Rcd. 559, 565, ¶ 11 (Jan. 4, 2008).

The Court therefore dismisses Counts V, VI, VII, and VIII of the Second Amended Complaint.

### 5. Count IX: Rhode Island Deceptive Trade Practices Act, R.I.G.L. § 6-13.1-1 *et seq.*

"To invoke the protection of the DTPA, 'a plaintiff must establish that he or she is a consumer[.]'" *Laccinole v. Appriss, Inc.*, 453 F. Supp. 3d 499, 506 (D.R.I. 2020) (quoting *Kelley v. Cowesett Hills Associates*, 768 A.2d 425, 431 (R.I. 2001)). While "consumer" is not defined in the DTPA, the Rhode Island General Assembly has directed that courts construe the statute with deference to the "interpretations of the Federal Trade Commission and the federal courts related to § 5(a) of the Federal Trade Commission Act." R.I.G.L. § 6-13.1-3. This Court previously has applied a "commonsense understanding of the word that encompassed activities like purchasing and utilizing commercial goods or services." *Appriss, Inc.*, 453 F. Supp. 3d at 506.

Here, Mr. Laccinole offers in the Introduction to his Second Amended Complaint only conclusory assertions that he is a "consumer" and never alleges that he engaged in any business transaction, or even attempted business transaction, with Navient. He therefore states no plausible claim for relief under the DPTA. Count IX of the Second Amended Complaint is dismissed.

### 6. Count X: Rhode Island Student Loan Bill of Rights Act, R.I.G.L. § 19-33-1 *et seq.*

Mr. Laccinole next brings a claim for violation of the Rhode Island Student Loan Bill of Rights Act, R.I.G.L. § 19-33-1 *et seq.*.  The Act provides that a "student loan borrower may bring an action under [the RI-DTPA] for a violation of § 19-33-12 as an unlawful act or practice under [the RI-DTPA]."  R.I.G.L. § 19-33-14.  Mr. Laccinole alleges merely that he "is a student loan borrower as that term is defined or referenced by RIGL § 19-33-2(6)."  (ECF No. 17 ¶ 19.)  This is the type of bald legal conclusion that, on its own, sets forth no plausible claim for relief.

The Court therefore dismisses Count X of the Second Amended Complaint.

### 7. Count XI: Right to Privacy, R.I.G.L. § 9-1-28.1

In Count XI, Mr. Laccinole claims that Navient's calls to him violated his right to privacy under R.I.G.L. § 9-1-28.1.  "In passing 9-1-28.1, the [Rhode Island] Legislature explicitly afforded protection to the four interests encompassed within the common law tort' recognized by the Restatement (Second) of Torts, one of which is intrusion upon seclusion."  *Appriss, Inc.*, 453 F. Supp. 3d at 507 (internal quotations omitted).  "The Restatement indicates that repeated unwanted telephone calls may constitute unreasonable intrusions upon seclusion."  *Id.*   There is no liability, however, "unless the interference with the plaintiff's seclusion is a substantial one, of a kind that would be highly offensive to the ordinary reasonable man, as the result of conduct to which the reasonable man would strongly object." Restatement (Second) of Torts § 652B cmt. d.

Navient argues that its calls to Mr. Laccinole cannot meet this standard and

in support of this assertion has provided audio recordings of some or all of the calls to Mr. Laccinole.  Again, however, because the authenticity of these calls is in dispute, the Court cannot consider them on a motion to dismiss.  *See Diva's, Inc.*, 411 F.3d at 38.

Mr. Laccinole otherwise properly states a claim under R.I.G.L. § 9-1-28.1 and Navient's Motion is thus denied on Count XI.

### 8.  Counts XII – XVI: Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.*

Mr. Laccinole brings several claims under the FDCPA, 15 U.S.C. § 1692 *et seq.*, a statute designed to protect against abusive practices of debt collectors.  Whether a defendant is a "debt collector" as that term is defined in the FDCPA is a threshold issue.  The FDCPA defines a "debt collector," as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692(a)(6).  But the Act exempts loan servicers from the FDCPA when "collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity … concerns a debt which was not in default at the time it was obtained by such person…." 15 U.S.C. § 1692(a)(6)(F)(iii); *see also Pollice v. Nat'l Tax Funding, L.P.*, 225 F.3d 379, 403 (3d Cir. 2000) ("Creditors—as opposed to 'debt collectors'—generally are not subject to the FDCPA.").  "Pursuant to this exemption, collection activity by a servicer that obtained the right to collect at a time when the debt was not in default does not constitute debt collection under

10

FDCPA." *Laccinole v. Twin Oaks Software Dev., Inc.*, 2014 WL 2440400, at *6 (D.R.I. May 30, 2014), *aff'd*, (1st Cir. Apr. 27, 2015).

Mr. Laccinole provides only a conclusory statement that the loan at issue was in default before Navient started servicing it. (ECF No. 17 ¶ 107.)  Moreover, the facts that he does allege would render such a conclusion implausible.  Mr. Laccinole asserts that he does not have an account with Navient, *id.* ¶ 101; that Navient "never validated any debt" to him that would provide him details relating to the student loan account, *id.* ¶ 103; he does not know the person Navient purportedly was attempting to contact about the loan, *id.* ¶ 56; Navient never provided to him the account number of the underlying debt or disclosed its amount, *id.* ¶¶ 279, 290; and Navient never disclosed the name of the creditor to whom any debt was owed, *id.* ¶ 294.

Mr. Laccinole's FDCPA claims (Counts XII, XIII, XIV, XV, and XVI) are dismissed.

### 9. Counts XVII to XXI: Rhode Island Fair Debt Collection Practices Act, R.I.G.L. § 19-14.9-1 *et seq.*

Regarding Mr. Laccinole's Rhode Island FDCPA claims, "[l]ike the federal FDCPA, the Rhode Island version excludes from the definition of a 'debt collector' a person who collects or attempts to collect a debt owed or due to the extent that the activity concerns a debt not in default at the time it was 'obtained' by the person." *Twin Oaks Software Dev., Inc.*, No. 13-716, 2014 WL 2440400, at *7 (citing R.I.G.L. § 19-14.9-3(5)(f)(3)).

As such, Mr. Laccinole's RI FDCPA claims (Counts XVII, XIX, XX, and XXI) also are dismissed.

### 10. Counts XXII and XXIII: Civil Liability for Crimes and Offenses and the Rhode Island RICO Act

Mr. Laccinole brings a claim under R.I.G.L. § 9-1-2, seeking damages for Navient's alleged criminal conduct. This claim fails, however, because the alleged criminal conduct is Navient's failure to register as a debt collector under R.I.G.L. § 19-14.9-13(1). As detailed above, Mr. Laccinole has not plausibly alleged that Navient was a debt collector required to so register. Count XXII is therefore dismissed.

Finally, Mr. Laccinole's claim under the Rhode Island Racketeer Influenced and Corrupt Organizations ("RICO") statute for unlawful debt collection activity also fails as a matter of law. Mr. Laccinole simply offers no facts to plausibly support a claim that Navient engaged in "racketeering activity" which the statute defines as "any act or threat involving murder, kidnapping, gambling, arson … robbery, bribery, extortion, larceny or prostitution, or any dealing in narcotic or dangerous drugs … or child exploitations…." R.I.G.L. § 7-15-1(c). Further, an "unlawful debt" means "a debt incurred or contracted in an illegal gambling activity or business or that is unenforceable under state law in whole or in part as to principal or interest because of the law relating to usury." R.I.G.L. § 7-15-1(d). Count XXIII is therefore dismissed.

### CONCLUSION

For the foregoing reasons, the Court GRANTS the defendants' Motion to Dismiss the Second Amendment Complaint (ECF No. 19) as to John M. Kane for want of personal jurisdiction. As to Navient, the Court GRANTS the defendants' Motion to Dismiss Counts III to X and XII to XXIII, but DENIES the Motion as to Counts I,

II, and XI.

Finally, the Court DENIES without prejudice to consideration upon further proceeding the defendants' request for sanctions.

IT IS SO ORDERED.

_____
Mary S. McElroy
United States District Judge
March 4, 2022

13